UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ABSOLUT FACILITIES MANAGEMENT, LLC,<br><br>       Debtor. | Chapter 11<br><br>Case No. 19-76260 (AST) |
| RONALD WINTERS, as Plan Administrator under the Chapter 11 Plan of Absolut Facilities Management, LLC,<br><br>       Plaintiff,<br><br> - against -<br><br>GRANDVIEW BROKERAGE CORPORATION,<br>       Defendant. | Adv. Proc. No. 21-08107 (AST)<br><br>**MEMORANDUM OF LAW IN SUPPORT** |

Dated: New York, New York
   February 15, 2022

                  Jeffrey Chubak
                  AMINI LLC
                  131 West 35th Street, 12th Floor
                  New York, New York 10001
                  (212) 490-4700
                  jchubak@aminillc.com
                  *Attorneys for Plaintiff*

# TABLE OF CONTENTS

                                                  **Page**

JURISDICTION ............................................................................................................. 1

BACKGROUND ............................................................................................................ 1

ARGUMENT .................................................................................................................. 3

I.      LEGAL STANDARD ............................................................................................ 3

II.     SUMMARY JUDGMENT SHOULD BE ENTERED IN PLAINTIFF'S FAVOR ON THE PREFERENCE CAUSE OF ACTION ........................................ 4

        A.     The Subject Payments were Transfers of the Debtor's Property ............................. 4

        B.     The Subject Payments Were Made to or for the Benefit of a Creditor on Account of an Antecedent Debt ................................................................. 5

        C.     The Subject Payments Were Made Within 90 Days Before the Petition Date, While the Debtor was Insolvent ................................................................. 5

        D.     The Subject Payments Enabled Grandview to Receive More than it Would Have Received in Chapter 7 Had They Not Been Made ................................................................. 5

        E.     Grandview's Affirmative Defenses Fail ............................................................... 6

III.    PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST FROM THE DATE OF THE COMPLAINT ................................................................................ 8

CONCLUSION ................................................................................................................ 8

Plaintiff Ronald Winters, as Plan Administrator under the Chapter 11 Plan of Debtor Absolut Facilities Management, LLC ("Debtor") submits this memorandum of law in support of his motion for summary judgment, pursuant to Rule 56, on his preference cause of action, insofar as it seeks to avoid and recover two payments of $75,000/each from Defendant Grandview Brokerage Corporation ("Grandview"), pursuant to 11 U.S.C. §§ 547(b) and 550(a)(1).

## INTRODUCTION

The Debtor was the management company for affiliated limited liability companies that owned and operated skilled nursing and assisted living facilities operated from leased premises. The Debtor and its insurance broker/agent Grandview executed a premium finance agreement dated May 10, 2019; and roughly two months later, within the 90-day period preceding the commencement of the Debtor's chapter 11 case on September 10, 2019, the Debtor made two $75,000 payments on account of invoices from Grandview in relation thereto. By this motion, Plaintiff seeks summary judgment in its favor on its cause of action to avoid and recover those two payments as a preference.

## JURISDICTION

This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334 and Section 10.1(a) of the Debtor's chapter 11 plan (Case 19-76260, Dkt. 560), which was confirmed May 18, 2020 (Case 19-76260, Dkt. 583), and became effective May 20, 2020 (Case 19-76260, Dkt. 595).

## BACKGROUND

Background information concerning the subject two payments is set forth in the accompanying Statement of Material Facts ("SMF"), which is incorporated herein.

In a nutshell, the Debtor and Grandview are both party to a Commercial Premium Finance Agreement, dated May 10, 2019 ("Agreement"), under which the Debtor financed Total

1

Premiums, Taxes and Fees of $1,026,954, on account of one policy carrying Premiums, Taxes and Fees of $976,954 and Agency Fees of $50,000. (SMF ¶8.)

Of the total, $205,390.80 (20%) is the "Cash Down Payment," leaving an Unpaid Premium Balance of $821,563.20, which is also the Amount Financed. (Id. ¶9.)

Pursuant to Section 14(iii) of the Agreement, Grandview represented and warranted to the Lender, First Insurance Funding, that "the Cash Down Payment and any past due payments have been paid in full to the Agent or Broker." (Id. ¶10.)

Grandview further represented, warranted and agreed, that "Insured [Debtor] has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the cash down payment has been received from Insured." (Id. ¶11.)

Said representations were false, in that Debtor had not paid the Cash Down Payment to Grandview as of May 10, 2019. Rather, Grandview invoiced the Debtor for the Cash Down Payment on that date (Invoice #4330), under cover of an email directing the Debtor to "Please try to work on the down payment." (Id. ¶12.)

The Debtor did not pay the invoice on receipt; rather, Grandview requested payment on each of May 14, May 16, May 20, May 22, May 23, May 24, May 30, June 5, June 11, June 12, June 13, July 5, July 8 and July 10. (Id. ¶13.)

Grandview's communications and invoices reflect that Debtor made one $75,000 payment, that was applied to the Cash Down Payment on July 1, 2019, and another $75,000 payment that was applied to the Cash Down Payment on July 11, 2019 (together, the "Subject Payments"), which is 52 days and 62 days, respectively, after Grandview represented and warranted to First Insurance Funding that the full Cash Down Payment had been paid. (Id. ¶14.)

2

The Subject Payments were made by check, and the payments were drawn from the Debtor's bank account at M&T Bank. (Id. ¶15.)

Grandview filed a proof of claim in the amount of $735,965.33 on account of insurance brokerage fees. The amount claimed is based on invoices for outstanding insurance obligations. The invoices annexed to the claim include Invoice #4330, for the outstanding balance of the Cash Down Payment. (Id. ¶16.)

## ARGUMENT

### I. LEGAL STANDARD

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Under Rule 56(c), to avoid summary judgment, the fact in dispute must be material. Whether a fact is material is to be determined by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a fact is material, the court must then determine if the dispute about the same is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. If the fact may be reasonably resolved in favor of either party, then there is a genuine factual issue that may only be resolved by the trier of facts and summary judgment must be denied. *Id*. at 250.

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,[1] against a party who fails to make a showing sufficient to

---

[1] The Adversary Pretrial Scheduling Order (Dkt. 15, ¶2) fixed a February 15, 2022 discovery cutoff.

3

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The summary judgment standard is interpreted to support its primary goal of "dispos[ing] of factually unsupported claims or defenses." *Id*. at 323-24.

## II. SUMMARY JUDGMENT SHOULD BE ENTERED IN PLAINTIFF'S FAVOR ON THE PREFERENCE CAUSE OF ACTION

The elements of a preference cause of action are satisfied as to the Subject Payments. 11 U.S.C. § 547(b) provides:

> [T]he trustee may … avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made … within 90 days before the date of the filing of the petition … and
>
> (5) that enables such creditor to receive more than such creditor were receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

### A. The Subject Payments were Transfers of the Debtor's Property

The requirement that "an interest of the debtor in property" have been transferred is satisfied, because the Subject Payments were made from the Debtor's bank account. (SMF ¶15.)

### B. The Subject Payments Were Made to or for the Benefit of a Creditor on Account of an Antecedent Debt

A debt is considered "antecedent" if it was incurred before the alleged preferential transfer; and a debt is incurred when the debtor first becomes legally obligated to pay the same. *In re Artha Mgm't, Inc.*, 174 B.R. 671, 678 (Bankr. S.D.N.Y. 1994). The Subject Payments were made to Grandview on account of an antecedent debt as the Agreement executed by it and the Debtor states that the Debtor was required to pay the Cash Down Payment over to Grandview by May 10, 2019; and Grandview invoiced the Debtor on the same date for that amount. (SMF ¶¶10-12.) Further, Grandview based its claim against the Debtor for insurance brokerage fees on the outstanding balance of the amount then invoiced. (Id. ¶¶14-16.)

### C. The Subject Payments Were Made Within 90 Days Before the Petition Date, While the Debtor was Insolvent

The Debtor is presumed insolvent under § 547(f), during the 90 days preceding the petition date (September 10, 2019), in this case from June 12, 2019, a period that includes the dates of the Subject Payments made in July 2019. A defendant may rebut the presumption of insolvency by introducing evidence that the debtor was not, in fact, insolvent when the Subject Payments were made. *In re Roblin Indus., Inc.*, 78 F.3d 30, 34 (2d Cir. 1996). If evidence is introduced to rebut the presumption, the Plaintiff must satisfy his burden of proving insolvency by a preponderance of the evidence. *Id*. There is nothing in the record to rebut the above presumption.

### D. The Subject Payments Enabled Grandview to Receive More than it Would Have Received in Chapter 7 Had They Not Been Made

The inquiry under § 547(b)(5), is whether Grandview recovered more having received the Subject Payments, than it would have received in chapter 7 had the Subject Payments not been made and it instead filed a claim for the same. *Savage Assoc. v. Mandle (In re Teligent, Inc.)*, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008). "As a practical matter, this element is satisfied whenever

the plaintiff shows that the creditor would receive less than 100% in a hypothetical chapter 7 distribution." *Id*. Here the Debtor's general unsecured creditors will not receive a 100% distribution. (Case 19-76260, Dkt. 517 (disclosure statement), projecting less-than-1% distribution for general unsecured creditors.) And plan confirmation amounted to a finding that the best interests test is satisfied, i.e. that the plan recovery exceeds that which would have been achieved in chapter 7. Given the foregoing, it is not possible that Grandview would have done better had the Debtors' facilities been liquidated in chapter 7 rather than sold (Dkt. 446) as a going concern in chapter 11 (excluding the Orchard Park facility, the lease for which was rejected in bankruptcy).

### E. Grandview's Affirmative Defenses Fail

#### 1. Legal Standard

On a motion for summary judgment, "where the nonmoving party bears the burden of proof on an issue at trial [i.e. preference defenses under § 547(g)], the moving party may simply point to the absence of evidence to support the nonmoving party's case." *In re Crystal Apparel, Inc.*, 220 B.R. 816, 828 (Bankr. S.D.N.Y. 1998) (citing *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990)). *See also Hasset v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 119 (S.D.N.Y. 1997) (same). We nevertheless address Grandview's asserted affirmative defenses below.

#### 2. Defenses

Grandview's second affirmative defense,[2] is that "[t]he payments complained of were made in consideration of new value." Construing this as asserting a defense under § 547(c)(4), the defense fails. § 547(c)(4) protects from avoidance transfers "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor … on account of which new value

---

[2] The first is failure to state a valid cause of action, which is not an affirmative defense.

the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." Despite request for "All documents reflecting New Value given by Defendant to or for the benefit of the Debtor during the Relevant Period" (defined as June 10, 2019 through September 11, 2019) and "All documents upon which Defendant intends to rely at trial" (Chubak Decl. Exhibit 7), Grandview produced no documents showing any new value (as defined in 11 U.S.C. § 547(a)(2)) given by Grandview to the Debtor after the Subject Payments were made (Chubak Decl. ¶9), and Plaintiff is unaware of any that has been provided. The discovery cutoff having now passed (see Footnote 1, supra), this defense fails.

Grandview's third affirmative defense, is that "[t]he payments complained of were made in the ordinary course of business." Construing this as asserting a defense under § 547(c)(2), the defense fails. § 547(c)(2) protects from avoidance transfers that were "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms" (i.e. ordinary for the industry). As with the new value defense, Grandview produced no documents showing that the Subject Payments were ordinary as between the parties (Chubak Decl. ¶9), and Plaintiff is unaware of any evidence that they were. And the Subject Payments cannot reasonably be considered ordinary for the industry, it being the case that Grandview represented to First Insurance Funding that the full Cash Down Payment had been paid as of May 10, 2019 even though the Subject Payments were not made until roughly two months after that.

For substantially similar reasons, Grandview's fourth affirmative defense, that "the payments complained of were made in a contemporaneous exchange," also fails. There was nothing contemporaneous about the Subject Payments. They were made over 60 days after the May 1, 2019 "effective date" set forth in the Agreement; and they were clearly not intended to be

7

a contemporaneous exchange for new value, given Grandview's representation to First Insurance Funding that the full Cash Down Payment had been paid as of May 10, 2019.

## III. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST FROM THE DATE OF THE COMPLAINT

It is within the Court's discretion to grant prejudgment interest in preference actions. *In re Cyberrebate.com, Inc.*, 296 B.R. 639, 645 (Bankr. E.D.N.Y. 2003). Further, 11 U.S.C. § 550(a) provides that a plaintiff can recover a preferential transfer or its value. Value includes prejudgment interest from at least the date of the complaint. *In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D. La. 1989). By awarding prejudgment interest from the date of the Complaint (June 16, 2021), the status quo ante is restored. Prejudgment interest is not a penalty, but rather is considered "delay[ed] damages … awarded as a component of full compensation." *General Motors Corp. v. Devez Corp.*, 461 U.S. 648, 654 n.10 (1983).

## **CONCLUSION**

Based on the undisputed facts, there is no material question of fact precluding the granting of summary judgment in Plaintiff's favor, in the amount of $150,000, together with prejudgment interest thereon from June 16, 2021.

| | |
|---|---|
| Dated: New York, New York<br>February 15, 2022 | AMINI LLC<br><br>/s/ Jeffrey Chubak<br>Jeffrey Chubak<br>131 West 35th Street, 12th Floor<br>New York, New York 10001<br>(212) 490-4700<br>jchubak@aminillc.com<br>*Attorneys for Plaintiff* |

8