# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> **ABSOLUT FACILITIES MANAGEMENT, LLC** <br><br>                  **Debtor.** | Chapter 11 <br><br> Case No. 19-76260 (AST) <br><br> **DECLARATION OF MICHAEL SCHWIMMER** |
| **RONALD WINTERS**, as Plan Administrator under the Chapter 11 Plan of Absolut Facilities Management, LLC <br><br>                  **Plaintiff,** <br> v. <br><br> **GRANDVIEW BROKERAGE CORPORATION,** <br><br>                  **Defendant.** | Adv. Prov. No. 21-08107 (AST) |

STATE OF NEW JERSEY      )
                                       ss.:
COUNTY OF OCEAN         )

       **MICHAEL SCHWIMMER** declares under penalty of perjury that the following is true and correct:

       1.     I am the Chief Executive Officer of Grandview Brokerage Corporation ("Grandview"). I submit this declaration, upon my personal knowledge, in opposition to plaintiff's motion for summary judgment.

       2.     Attached hereto as Exhibit A is a true and correct copy of the Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered into Prepetition, (B) Pay and Satisfy Prepetition Obligations Related Thereto, Including Broker

1

Fees and Premium Financing Obligations; and (II) Granting Related Relief, filed by Debtor in its bankruptcy proceeding.

3. I have worked in the insurance industry as a licensed insurance broker since 2009. As part of my business, I routinely—on a near daily basis—assist clients in negotiating and obtaining premium financing.

4. Absolut Facilities Management, LLC ("Debtor") has been a client since 2012.

5. Grandview and Debtor do not share any officers, directors, employees, or shareholders.

6. For several years, Grandview secured workers' compensation insurance coverage for Debtor from Oriska Insurance Company. Starting in 2017, however, Debtor instead obtained both its liability insurance and workers' compensation insurance from Zurich North America ("Zurich"). Debtor's 2019 policies were issued by American Guarantee & Liability Insurance, a subsidiary of Zurich North America.

7. Without workers' compensation insurance, Debtor would not have been legally permitted to operate.

8. Each year, in the ordinary course of its business, the Debtor would finance the premiums for its workers' compensation insurance.

9. The Debtor's arrangements were not any different than any of our other similarly situated clients. Notwithstanding the fact that the financing agreement requires the down payment up front, Grandview fronted the down payment to be paid over the course of months in installments. Grandview is not unique in this respect but, rather, this is a normal, standard, industry practice.

10. For example, Debtor financed its 2017 workers' compensation policies, effective 5/1/2017. Debtor's premium, taxes, and fees on those policies totaled $2,149,355.00, of which Debtor financed $1,932,036.93. Attached hereto, as Exhibit B, is a true and correct copy of the of Debtor's 2017 premium finance agreement.

11. The Debtor was obligated to provide a down payment of $217,318.07 as part of the 2017 premium finance arrangement. As part of the normal course of business, Grandview fronted the deposit and the Debtor reimbursed Grandview over four payments: Debtor paid $100,000 on 5/31/2017; $8,000 on 6/5/2017; $100,000 on 6/8/2017; and $9,318.07 on 6/9/2017. *Id.* Debtor recognized that if it failed to make the reimbursement, its policies would have been immediately canceled.

12. The same arrangement was in place for the 2018 workers' compensation policies effective 5/1/2018. Debtor's premium, taxes, and fees totaled $1,557,481.00, of which it financed $1,323,858.85. Attached hereto, as Exhibit C, is a true and correct copy of the of Debtor's 2018 premium finance agreement.

13. The Debtor was obligated to provide a down payment of $233,622.15 as part of the 2018 premium finance arrangement. As part of the normal course of business, Grandview fronted the deposit and the Debtor reimbursed Grandview over four payments: Debtor paid $77,874.05 on 6/20/2018; $77,874.05 on 8/27/2018; and $77,874.05 on 12/5/2019. *Id.* Debtor recognized that if it failed to make the reimbursement, its policies would have been immediately canceled.

14. Debtor did the same thing for its 2019 workers' compensation policies, the payments for which are the subject of this motion. Debtor's policy premium was financed with a down payment of $205,390.80 and a financed amount of $821,563.20 at 4.5% APR. A true and correct copy of Debtor's 2019 premium finance agreement is attached hereto as Exhibit D. As

part of the normal course of business, the Debtor made two payments towards the down payment, each in the amount of $75,000, one on July 1, 2019 and another on July 11, 2019. Debtor recognized that if it failed to make the reimbursement, its policies would have been immediately canceled.

15. As part of the arrangement Grandview routinely secures for its clients, if financing payments are not reimbursed, Grandview had the authority to terminate the policies.

16. In the ordinary course of business, Grandview would send the Debtor multiple emails reminding it to make its payments.

17. If the Debtor had not made the two $75,000 payments, Grandview would have directed Zurich to immediately cancel the policies. Without workers' compensation insurance, Debtor would have been forced to immediately cease operations.

18. Indeed, the emails to the Debtor repeatedly emphasized that, if the Debtor did not make its financing payments, the policies would be canceled. *See* Chubak Declaration dated February 15, 2022 at Exhibit 3.

Dated: March 25, 2022

_____
**MICHAEL SCHWIMMER**